IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| LISA A. HOUSE, | |
| Plaintiff, | |
| v. | Civil Action No. l:17-cv-220 |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, and UNUM GROUP CORP., | |
| Defendant. | |

### DECLARATION OF LISA A. HOUSE

I, Lisa House, declare, pursuant to 28 U.S.C. §1746, and under penalty of perjury under the laws of the United States that the foregoing is true and correct:

1. My name is Lisa House, and I am the Plaintiff in the above-styled cause of action (the "Lawsuit"). I am over the age of 21 years of age, am competent to testify to the statements set forth in this Declaration, and the statements set forth herein are based upon my personal knowledge.

2. In late May 2017, Unum informed me that it would be ordering me to sit for a medical examination with a physician it hired.

3. At that time, Unum did not inform me that I could not bring a companion into the examination or that I would not be allowed to record the event.

4. I was concerned by Unum's decision to require my examination, as my condition had not improved, my treatment had remained consistent (apart from a brief

increase in treatment related to an automobile accident I had in early 2017), my treating physician continued to provide Unum with similar support as before, and Unum had never previously ordered me to be examined in the previous 17 years I have received benefits from it.

5. I am uncomfortable with the examination because I believe that Unum is requiring my examination in order to find a way to deny my claim, and not as a neutral claim investigation tool.

6. My concern about the examination led me to contact and consult with Hudson Ellis at Eric Buchanan & Associates, PLLC.

7. During that consultation, Mr. Ellis informed me that a former Vice President for Unum's subsidiary had testified that it used tactics like searching for the "right" doctor who would give Unum the answer it wanted, which was consistent with what I thought Unum was doing with me here.

8. Mr. Ellis also informed me that, though there was nothing to prevent Unum from requiring an examination and using similar tactics for picking a doctor in my case, I could ensure that the examination was accurately documented by bringing a witness and having the examination recorded.

9. Mr. Ellis also informed me that Unum had recently granted a similar request to have an examination recorded based on a policy with almost identical language to my policy.

10. Before the examination, Unum never told me that I could not bring a witness or record the examination and none of Unum's letters to me prohibited me from doing so.

11. To my knowledge, my disability policy did not state that I could not bring a witness or record the examination.

12. Because the examination was with a doctor hired by Unum and would affect the benefits I had received for 17 years and have come to rely on, combined with my concern about Unum's motives for the examination, I decided to attend the examination with a witness and seek to record it.

13. When I arrived at the examination location, I noticed that it was not a normal doctor's office; there were no other examinees in the waiting room and there was a video recording device there.

14. At the examination, I was informed for the first time that the doctor would not allow me to bring a witness into the examination or obtain a recording of it when the doctor's staff handed me a form with this information in it.

15. Doctor Harries became agitated when I requested permission to bring a witness and to record the exam.

16. He said that he was not a movie star, that he did not want to be on video, and that I would be half dressed in the exam and asked me if I really wanted a video of that to be all over the internet.

17. He also told me that if I did not agree to the examination within 2 minutes, he would report to Unum that I missed my appointment.

18. I was uncomfortable with Dr. Harries's condescending demeanor and lack of professionalism in their conversation.

19. The doctor also threatened me that if I did not complete the examination with him on that date, I would be cut off from my disability benefits, though he later

tempered it to only being "very likely" that Unum would deny my claim based on my refusal.

20. Though I wanted to comply with Unum's requirement that I attend the examination, I was afraid to be examined without any way of documenting what occurred in the examination.

21. I knew that I would be under stress and it would be difficult for me to remember what I was asked and how I responded, as well as what the doctor told me during the examination.

22. I was concerned that, even if the doctor provided a neutral report, if he failed to make note of all I told him, Unum would use that to deny my claim.

23. That being the case, I left the doctor's office and, when I got to my car, called Unum to tell it that I was not allowed to bring a witness or record the examination and ask Unum's reason for this, as well as to ask Unum either talk with the doctor about allowing the accommodation, or find an alternate doctor who would.

24. After initially leaving a message with the Unum employee who answered my call, Ms. Woodrow returned my call and we talked about the issue; she told me that she would need to speak with her supervising director and would get back to me.

25. Ms. Woodrow eventually told me that Unum would not allow me to have a witness or record the examination, and would reschedule the examination with the same doctor as before.

26. Because I continued to be concerned about being examined by Unum's contracted physician without any way to document the event, I retained Mr. Ellis and his

firm on June 22, 2017 to assist me protecting myself and my rights in relation to the medical examination.

Executed on June 26, 2018.

*Lisa A. House*
_____
Lisa A. House