

# Independent Assessments

**In this document:**

Applicability
Policy
Procedure
    Claimant's Right to Request an IME (LTD and IDI only)
        Notifying the Claimant:  New Claims
        Notifying the Claimant:  Reminder Notification
        Evaluating the Claimant's Request
        Ongoing Benefits While Independent Assessment Results are Pending
    Determining if an IA is Appropriate (LTD and IDI only)
        When an IA is Appropriate
        When an IA is Not Appropriate
        When an IA May Be Appropriate:  Factors to Consider
        Chief Medical Officer/Designated Medical Officer Review Process
        Documenting the Claim File
    Determining if an IA is Appropriate (LTC only)
    Requesting an IA
    Using the IA Report
        Requesting an Addendum
        Evaluating Information Provided by the Attending Physician after the IA Report
        Sharing the IA Report with the Attending Physician
    Travel Costs
        Estimated Travel Costs
        Factors to Consider
    Failure/Refusal to Participate in an Independent Assessment
    Reference

## Applicability

LTD (FI/SI), IDI, LTC

Top ▲

## Policy



Unum has an obligation to consider all medical information, which includes giving deference to the opinion of the claimant's AP(s) when making a medical determination. Any claims professional involved with the administration of a claim may recommend obtaining an IA.

For LTD and IDI claims, if our initial analysis lacks clarity or we have reason to question the information or opinion provided by the AP, we must attempt to contact the AP. See Medical Information and Resources and Medical Peer-to-Peer Contact. If an agreement cannot be reached after this contact, Unum has an obligation to obtain a second view of the medical information. This can be done in-house by a DMO or by an external examiner or records reviewer, but we should always consider whether an independent exam is or is not necessary. A claimant can request an IME at any time and we must notify the claimant of this right.

**Reminder: Each claim is unique and should be evaluated on its own merits. The actual policy governing the claim must be referenced.**

Top ▲

Top ▲

## Procedure

# Claimant's Right to Request an IME (LTD and IDI only)

We are required to proactively notify claimants of the right to request an IME.

## Notifying the Claimant: New Claims

| If, within 10 days of receipt of the claim: | Then: |
|---|---|
| • the claim is approved, and<br>• IME text has not previously been provided | include the *IME Notification Text* (located in NL CT under Letter Text / Other Letter Text / Miscellaneous) in the approval letter. The text is not automatically included in our approval letters and must be added manually. |
| • an adverse decision is made,<br>• the claimant's medical condition was relevant to this determination, and<br>• IME text has not previously been provided | include the IME notification text in the decision letter. The text is not automatically included in our adverse claim letters and must be added manually. |
| • an adverse decision is made, and<br>• the claimant's medical condition had no relevance to this determination (the | the decision letter does not need to include the IME notification text. |

Case 1:17-cv-00220-HSM-CHS   Document 49-3   Filed 06/27/18   Page 2 of 23   PageID #: 1039



| determination instead was based on policy provisions such as eligibility, minimum hours, etc.) | |
|---|---|
| an IL decision cannot be made | send a claim initiation letter (or similar status letter) to the claimant.<br><br>The claim initiation letter automatically includes the IME notification text (which is not to be removed). If you choose another status letter, you must manually add the IME notification text. |

The *Integrated STD-LTD Claim Transfer* letter includes the IME notification text.

## Notifying the Claimant: Reminder Notification

In order to remind the claimant of his/her right to request an IME, we will re-send the IME notification text when the following circumstances apply:

- 5 years have elapsed since the last notification; and
- we are requesting updated medical information from the claimant.

If a claimant has not received IME notification text, but the claimant's medical condition has no relevance to our claim determination, then written notification of the right to request an IME is not necessary. Such situations include:

- death of the claimant during the EP;
- eligibility issues (e.g., failure to be in an eligible class, failure to meet minimum hour requirements);
- claims marked up in error;
- claims withdrawn by the claimant;
- claims where we have verified the claimant actually RTW FT;
- policy max-outs (e.g., age 65, death); or
- standalone policies or policy provisions that pay benefits other than disability (e.g., BOE, NDI, hospital benefits)

## Evaluating the Claimant's Request

Generally, we will approve the claimant's request for an IME unless:

- an adverse decision was or is being made that was or is not medically based;
- an IME involving an actual examination of the claimant was recently obtained;

Case 1:17-cv-00220-HSM-CHS   Document 49-3   Filed 06/27/18   Page 3 of 23   PageID #: 1040


- a current IME cannot assess the claimant's condition for the prior relevant time period (e.g., broken bone healed with no residual effect; infection resolved with no residual effect);
- an IME was obtained prior to the adverse decision and the claimant requests another one on appeal;
- there is no material medical disagreement with the claimant's providers; or
- we are paying the claim.

If we decline the claimant's request for an IME, use the *Declining IME Request Text* located in NL CT under Letter Text / Other Letter Text / Miscellaneous to inform the claimant in writing.

**Ongoing Benefits While Independent Assessment Results are Pending**

When you agree to obtain an IA in response to a claimant's request, the timing of the request generally determines whether benefits will be paid pending the results of the IA. Consider <u>Reservation of Rights</u> as appropriate.

| If the IME is requested: | Then: |
|---|---|
| prior to the IL decision | it is not necessary to pay benefits. |
| while the claim is open and benefits are being paid | generally continue benefits while the IA is pending. See <u>Suspension of Benefits</u>. |
| during notification of an adverse decision | <ul><li>if the claim is non-<u>ERISA</u>, consult your <u>DLR</u>.</li><li>if the claim is ERISA, pay ongoing benefits under <u>ROR</u> while the IA is pending.</li></ul> |
| during the appeal of a decision to deny or terminate benefits | do not pay benefits while the IA is pending. |

<u>Top</u> ▲

# Determining if an IA is Appropriate (LTD and IDI only)

Occasionally, the available medical information in a claim file is insufficient to fully evaluate the insured's claim for benefits. In those instances, it may be appropriate to consider one of several kinds of IAs described in <u>Independent Assessment Request Guidelines</u> performed at our request by an independent third party clinical or medical professional.

**When an IA is Appropriate**

Generally, an IME or Independent Paper/Medical Review should be requested in the following situations **unless** we have made the decision to pay or continue paying the claim:

Case 1:17-cv-00220-HSM-CHS   Document 49-3   Filed 06/27/18   Page 4 of 23   PageID #: 1041



- a prior IME found disabling limitations and the current impairment is based on the same limitations.
- a Company medical professional or other resource (e.g., DLR, DBS responsible for the claim) states that an IME is needed.
- a difference of opinion exists between 2 or more of the Company's medical professionals regarding the existence of a disabling condition.
- the insured or AP requests an IME, either directly or through the insured's representative.

## When an IA is Not Appropriate

Certain claim situations are not likely to benefit from an IA.  Generally, it would be inappropriate to request an IA when the insured:

- has an acute illness or injury with a reasonably documented time frame for recovery; or
- has a clearly established level of disability with no RTW potential due to the extent of medical/psychiatric problems; or
- is in a hospice program; or
- has a life expectancy of less than 24 months.

## When an IA May Be Appropriate:  Factors to Consider

If medical information in the file is unclear or insufficient to fully assess the insured's medical condition, or if we have reason to question opinions/information provided by the AP, follow these steps before requesting an IA:

| Step: | Action: |
|---|---|
| 1 | **Consider other sources of information** prior to requesting an IA to help ensure we used all reasonable resources to clarify/supplement medical information in the file.<br><br>Sources include:<br><br>- medical information in the file (e.g., treatment notes, test results)<br>- additional information/analysis from the insured's AP<br>- internal medical experts (e.g., OSP/CC)<br>- peer-to-peer calls between a medical consultant and the AP<br>- field visits, clinical/vocational case managers or Unum's field representatives |
| 2 | If questions about the insured's medical and/or psychiatric status persist, **consult an OSP**.  An OSP can help determine whether an IA is appropriate and provide guidance on the type of medical provider appropriate to conduct the IA.<br><br>Factors to consider include:<br><br>- Is the medical data well developed?  Does it appear to be complete? |

Case 1:17-cv-00220-HSM-CHS   Document 49-3   Filed 06/27/18   Page 5 of 23   PageID #: 1042



| | • Is the interpretation of the medical data straightforward or could there be scientifically reasonable alternative interpretations? <br> • Does a controversial diagnosis and/or treatment plan contribute to work capacity or worsen the prognosis for recovery? <br> • How strong is our scientific analysis when compared to the one adopted by the AP? <br> • What are the credentials of our internal medical consultant as compared to the AP's credentials? |
|---|---|
| 3 | If questions about the insured's medical and/or psychiatric status continue to persist, the OSP/CC should attempt to contact the AP.  See Medical Peer-to-Peer Contact. |
| 4 | When the peer-to-peer contact process is complete, and <br><br> • the OSP/CC and AP still disagree about the medical issue(s) and its (their) effect on the insured's capacity for work, and <br> • we have not made a decision to pay or continue paying the claim… <br><br> …then request an IA according to these guidelines: <br><br> • If the disagreement primarily concerns an issue of data interpretation (that is, an examination of the insured would not be useful to understand the allegedly impairing condition), then request an Independent Paper/Medical Review. <br> • If the opinion of our medical resources is the primary basis for denial or termination of benefits, then request an IME unless the CMO/DMO process indicates otherwise as outlined below. |

## Chief Medical Officer/Designated Medical Officer Review Process

| Step: | Action: |
|---|---|
| 1 | The CMO/DMO reviews the claim, focusing on the area(s) of disagreement between the AP and our medical resources involved in the claim. |
| 2 | The CMO/DMO performs a separate analysis of: <br><br> • the issue(s) about which there is disagreement, and <br> • any other information in the file that the CMO/DMO deems relevant to the claim decision.  Continue below. |

| If the CMO/DMO analysis | Then an IME: |
|---|---|
| • determines that the AP's opinion is not well supported by medically acceptable clinical or laboratory diagnostic techniques, and | is not needed at the present time. |


| | |
|---|---|
| • determines that the AP's opinion is inconsistent with the other substantial evidence in the file, and<br>• concludes that there is reasonable medical certainty supporting the position of the Company's medical resources | |
| • can't determine that the AP's opinion is not well supported by medically acceptable clinical or laboratory diagnostic techniques, or<br>• can't determine that the AP's opinion is inconsistent with the other substantial evidence in the file, or<br>• is unable to conclude that there is reasonable medical certainty supporting the position supporting the Company's position | should be requested. |
| agrees with the AP's opinion (that is, there is agreement about the current existence of a disabling condition) | is not needed at the present time. |

**Documenting the Claim File**

When considering whether or not to request an IA, the claim file should be documented with:

- any alternate sources of information utilized during the evaluation,
- the specific factors considered, and
- the rationale for the determination whether or not to request the IA.

Top ▲

# Determining if an IA is Appropriate (LTC only)

LTC may require an IME or other functional evaluation to provide additional information regarding degree of impairment, diagnosis/prognosis, R&Ls, treatment, etc. Before considering an IME, LTC Benefits Specialists are to determine whether the available evidence is sufficient to resolve the outstanding medical issues.

| Step: | Action: |
|---|---|
| 1 | Seek management approval for an IME. |
| 2 | Utilize the medical director when:<br><br>• determining the need for an IME;<br>• developing appropriate questions for the IME; and<br>• interpreting the IME results as outlined in the "Using the IA Report" section below. |
| 3. | When requesting an IA other than an IME, utilize clinical and medical resources as appropriate. |



# Requesting an IA

The decision to request an IA is made on a case-by-case basis after determining whether an IA is appropriate. IAs are coordinated through the IAN, which supports the BC but is not involved in the administration of any claims.

Once the decision is made to request an IA, the DBS will initiate the referral to the IAN with input from medical and vocational resources (as necessary). If an FCE is recommended and a prescription is required, we will obtain the prescription from the insured's AP to document that the insured has the physical capacity to perform the physical tests in the evaluation.

When soliciting evaluations of the insured's impairment by a clinical or medical professional (employed by Unum or otherwise), the DBS must provide these professionals with all available medical, clinical and/or vocational evidence in the claim file, including findings and claimant reports, concerning the insured's impairment and relevant to the questions posed to the medical professional.

In recognition of the special function that medical professionals perform in assessing medical information concerning claimants, Company personnel (including but not limited to claims handling personnel) will not attempt to influence an IA provider in connection with his/her opinion concerning the medical evidence or medical condition relating to a claimant.

To request an IA, the DBS should:

| Step: | Action: |
|---|---|
| 1 | **Notify the claimant.** Contact should be made by telephone, then confirmed in writing:<br><br>• Explain that an IA has been requested.<br>• Describe the rationale for the IA.<br>• Advise that an IA Coordinator will send the claimant information about the appointment.<br>• Validate the claimant's current address, telephone numbers and dates unavailable. |
| 2 | **Ensure appropriate file documentation.** The file should contain documentation that:<br><br>• we notified the claimant (verbally and in writing) of our intent and rationale for performing the IA;<br>• the claimant signed a HIPAA-approved consent form and it is current;<br>• we verified the claimant's current address and telephone number;<br>• we identified any special transportation or scheduling needs; |

Case 1:17-cv-00220-HSM-CHS   Document 49-3   Filed 06/27/18   Page 8 of 23   PageID #: 1045



| | | we received updated medical records; |
|---|---|---|
| | | • the appropriate medical resource(s) reviewed the updated medical records within 60 days of the referral; and |
| | | • we used medical resources appropriately to: |
| | | ○ determine the type of medical specialist required; and |
| | | ○ prepare the IAN referral and draft specific questions for the IA provider (see Step 3). |
| 3 | | **Complete an IAN referral** (see Instructions for completing the NL IA Request Activity in <u>Independent Assessment Request Guidelines</u>). |

<u>Top ▲</u>

# Using the IA Report

Review the IA report when you receive it from the IAN.

If you have questions about the IA report, or an addendum or <u>peer-to-peer call</u> is necessary, forward the report to a medical resource. If the insured completed a psychological or neuropsychological examination and the IA report contains raw data, share the report with an OSP who is qualified to interpret the results (see <u>Claim File Documentation - Raw Psychological Test Data</u>).

Share the IA report with the AP in situations outlined below.

## Requesting an Addendum

If the medical resource determines that the IA report is incomplete, we should request an addendum through the IAN and forward clarification questions or new information for the IA provider to review. The IAN will coordinate with the IA provider to obtain the addendum.

The reason for requesting an addendum should be clearly documented in the claim file. Common reasons include:

- the IA report does not fully answer the questions provided.
- we need clarification of one or more points made by the IA provider.
- the IA provider should review new data available after the IA has occurred (e.g., new medical evidence).

## Evaluating Information Provided by the Attending Physician after the IA Report

- **New Medical Information** - A medical resource will evaluate any new medical information provided by the AP following receipt of the IA report to determine if additional steps should be taken on the claim.
- **AP Disagreement with IA Report** - If the AP indicates prior to the final claim determination that s/he disagrees with the finding in the IA report without new medical



evidence, the disagreement generally will not be sufficient to alter the final claim determination.

- **Claim File Documentation** - Our analysis of the information provided by the AP and the rationale for the next steps should be clearly documented in the claim file (see <u>Claim File Documentation</u>).

### Sharing the IA Report with the Attending Physician

| If the IA was: | Then: |
|---|---|
| requested as an independent external review to fully evaluate the insured's claim for benefits and resulted in new medical information (e.g., an FCE or IME requested specifically to obtain an independent evaluation of the claimant's condition) | share a copy of the IA report with the AP as a courtesy. |
| requested to replace an OSP - including DMO - review (e.g., an IA requested because we did not have an OSP with the appropriate specialty) | there is no requirement to share the IA report with the AP |
| obtained during an appellate review of the claim | there is no requirement to share the IA report with the AP. |

If the insured completed a psychological or neuropsychological examination and the IA report contains raw data, it should be shared in a manner consistent with the guidelines above with an AP who is qualified to interpret the results (see <u>Claim File Documentation - Raw Psychological Test Data</u>).

<u>Top</u> ▲

## Travel Costs

Any decision to pay travel-related expenses associated with an IA that are expected to exceed $750.00 requires director or manager approval, which should be documented in the claim file.

### Estimated Travel Costs

When travel costs associated with an IA are expected to exceed $750.00, the IAN will inform the DBS, who should then obtain approval from his/her director or manager. The director or manager will then contact the IAN as to whether or not to schedule the IA.

### Factors to Consider

We will consider payment of reasonable travel related fees on a claim-by-claim basis. Factors to consider when determining whether we will assist with the costs include:

- the distance we are asking claimant to travel
- whether any special accommodations are needed to allow the claimant to attend the IA

Case 1:17-cv-00220-HSM-CHS   Document 49-3   Filed 06/27/18   Page 10 of 23   PageID #: 1047



# Failure/Refusal to Participate in an Independent Assessment

See <u>Failure/Refusal to Participate in an Independent Assessment, Personal Visit or Face to Face Assessment</u>.

Top ▲

## Reference

Please refer any questions to your manager.

**Procedure**

- <u>Claim File Documentation</u>
- <u>Claim File Documentation - Raw Psychological Test Data</u>
- <u>Failure/Refusal to Participate in an Independent Assessment, Personal Visit or Face to Face Assessment</u>
- <u>Medical Information and Resources</u>
- <u>Medical Peer-to-Peer Contact</u>
- <u>Recording Conversations and Independent Assessments</u>
- <u>Reservation of Rights (ROR)</u>
- <u>Suspension of Benefits</u>

**BC Learning & Reference**

- <u>Independent Assessment Request Guidelines</u>

Top ▲

Case 1:17-cv-00220-HSM-CHS   Document 49-3   Filed 06/27/18   Page 11 of 23   PageID #: 1048



# Medical Information and Resources

**In this document:**

Applicability
Policy
Procedure
    The Benefits Center's Medical Department
        Guiding Medical Principles
        Certification of Review (LTD and IDI only)
    Independent Assessments
    Medical Letters of Advocacy or Support
Reference

## Applicability

LTD (FI/SI), IDI, LTC, LWOP, VB Disability, VB LWOP

Top ▲

## Policy

All data obtained during the claim evaluation process must be considered when making decisions regarding liability.  This data includes information that supports disability and work capacity, such as:

- Policy provisions
- Claimant's activities
- Occupational duties (LTD, IDI and VB Disability)
- Financial information (LTD and IDI)
- Medical information
- Claimant reports
- Reference tools (e.g., MDGuidelines)

Because illness or injury is at the foundation of every claim, medical information is fundamental to an understanding of a claimant's:

- opportunity for medical improvement
- R&Ls (LTD, IDI and VB Disability)

Case 1:17-cv-00220-HSM-CHS   Document 49-3   Filed 06/27/18   Page 12 of 23   PageID #: 1049



- capacity for RTW (LTD, IDI and VB Disability)
- functional and cognitive abilities
- capacity for return to independence (LTC)

Analysis of medical information drives the success of early intervention and medical case management where we partner with treatment providers to facilitate rehabilitation and RTW in appropriate cases.

During the claim evaluation process, assess medical information for its relevance as it relates to impairment and function.  There are a number of avenues beyond the treating HCP/AP available for obtaining an assessment of the medical information and/or the claimant's R&Ls (LTD, IDI and VB Disability) or functional and cognitive abilities (LTC), including:

- Internal medical resource
- IA
- Field referrals

**Reminder:  Each claim is unique and should be evaluated on its own merits.  The actual policy governing the claim must be referenced.**

Top ▲

<div style="background:#808080;">**Procedure**</div>

# The Benefits Center's Medical Department

Internal medical resources are available to assist with the analysis of medical information.  Our medical resources are available to:

- assess medical information from the perspectives of adequacy and consistency;
- apply current medical knowledge to medical data regarding diagnosis, treatment, prognosis and impairment;
- offer guidance regarding pertinent future medical information;
- attempt to clarify medical information with a peer-to-peer call; and
- evaluate functional and cognitive abilities and their expected impact on independence.

In recognition of the special function that medical resources perform in assessing medical information concerning claimants, Company personnel (including but not limited to claims handling personnel) will not attempt to influence a CC, OSP or IA provider in connection with such professional's opinion concerning the medical evidence or medical condition relating to a claimant.

**Guiding Medical Principles**

Case 1:17-cv-00220-HSM-CHS   Document 49-3   Filed 06/27/18   Page 13 of 23   PageID #: 1050



Internal medical resources are expected to apply an appropriate level of critical scientific analysis to the review of medical information. Their analysis will be guided, in part, by the following principles:

- The claimant's complete medical condition (diagnoses as well as documented medical symptoms) will be considered and evaluated by our medical resources. When a medical resource notes a diagnosis or symptom outside the resource's medical specialty, s/he should provide the claims professional with guidance or recommendations for further evaluation of the same. When appropriate, additional medical reviews may occur in an effort to gain an understanding of the claimant as a whole.
- Office notes, test results or other medical records that record findings of the claimant's visits are generally more useful than a "narrative summary" from the AP/HCP.
- More recent medical information is often more informative regarding current status than older data.
- An opinion from an AP/HCP with a higher level of expertise, specialization or training is generally more persuasive than the opinion from a provider with a lesser level of expertise, specialization, or training.
- A medical conclusion/opinion founded on detailed specific facts or observations is more persuasive than a medical conclusion without such a foundation.
- When an attending AP/HCP is recommending R&Ls, we should consider the basis behind the recommendation and determine whether we have the same information/reports the AP/HCP used in making his/her determination.

## Certification of Review (LTD and IDI only)

The claim file should reflect the rationale for our medical conclusions as well as the rationale for why, or why not, alternative sources of information gathering were pursued, such as a peer-to-peer call or IA.

When a medical resource concludes that impairment is inadequately supported or not supported by the medical information in the claim file, that professional should certify in writing that s/he has reviewed all of the medical and clinical evidence provided to him/her by the DBS administering the claim.

When new medical information is received after a medical review and certification has already taken place:

- the same medical professional who reviewed and certified the original medical information may review the new medical information. The medical professional should then certify in writing that s/he has reviewed the new information that supplements the information s/he reviewed previously; or
- a different medical professional may review the new medical information. That medical professional should then review and certify in writing that s/he has reviewed all of the medical and clinical evidence provided to him/her by the DBS administering the claim.

If an adverse claim decision is not based in whole or in part upon a Company medical opinion regarding impairment, medical resource certification may be present but is not required. A

Case 1:17-cv-00220-HSM-CHS   Document 49-3   Filed 06/27/18   Page 14 of 23   PageID #: 1051



certified medical opinion may not be necessary in certain situations, including but not limited to situations where the adverse claim decision is based solely upon a contractual provision that does not include consideration of impairment (e.g., the pre-ex condition exclusion).

Top ▲

## Independent Assessments

Generally, if medical information in the file is unclear or insufficient to fully assess the insured's medical condition or we have reason to question opinions/information provided by the AP/HCP, we should consider other sources of information prior to requesting an IA. Doing so will help ensure we used all reasonable resources to clarify and/or supplement medical information in the file. If questions about the insured's physical and mental status persist, consult an OSP/CC, who can help determine whether an IA is appropriate and provide guidance on the type of medical provider appropriate to conduct the IA. See Independent Assessments.

Top ▲

## Medical Letters of Advocacy or Support

A generic statement from the claimant's medical provider or attending HCP supporting disability is not sufficient to approve or continue benefit payments in most cases. A factual basis behind the opinion should be evident. It may be relevant to evaluate whether the medical provider considered the claimant's work capacity relative to the claimant's occupation for LTD and IDI and functional and cognitive abilities and their expected impact on independence for LTC.

Top ▲

## Reference

Please refer any questions to your manager.

**Procedure**

- Functional Capacity and Occupational Demands
- Independent Assessments
- Medical Peer-to-Peer Contact
- Using the Term "Objective"

Top ▲

Case 1:17-cv-00220-HSM-CHS   Document 49-3   Filed 06/27/18   Page 15 of 23   PageID #: 1052



# Medical Information and Resources

**In this document:**

Applicability
Policy
Procedure
    The Benefits Center's Medical Department
        Guiding Medical Principles
        Certification of Review (LTD and IDI only)
    Independent Assessments
    Medical Letters of Advocacy or Support
Reference

## Applicability

LTD (FI/SI), IDI, LTC, LWOP, VB Disability, VB LWOP

Top ▲

## Policy

All data obtained during the claim evaluation process must be considered when making decisions regarding liability. This data includes information that supports disability and work capacity, such as:

- Policy provisions
- Claimant's activities
- Occupational duties (LTD, IDI and VB Disability)
- Financial information (LTD and IDI)
- Medical information
- Claimant reports
- Reference tools (e.g., MDGuidelines)

Because illness or injury is at the foundation of every claim, medical information is fundamental to an understanding of a claimant's:

- opportunity for medical improvement
- R&Ls (LTD, IDI and VB Disability)

Case 1:17-cv-00220-HSM-CHS   Document 49-3   Filed 06/27/18   Page 16 of 23   PageID #: 1053



- capacity for RTW (LTD, IDI and VB Disability)
- functional and cognitive abilities
- capacity for return to independence (LTC)

Analysis of medical information drives the success of early intervention and medical case management where we partner with treatment providers to facilitate rehabilitation and RTW in appropriate cases.

During the claim evaluation process, assess medical information for its relevance as it relates to impairment and function. There are a number of avenues in addition to the treating HCP/AP available for obtaining an assessment of the medical information and/or the claimant's R&Ls (LTD, IDI and VB Disability) or functional and cognitive abilities (LTC), including:

- Internal medical resource
- IA
- Field referrals

**Reminder: Each claim is unique and should be evaluated on its own merits. The actual policy governing the claim must be referenced.**

Top ▲

Top ▲

## Procedure

# The Benefits Center's Medical Department

Internal medical resources are available to assist with the analysis of medical information. Our medical resources are available to:

- assess medical information from the perspectives of adequacy and consistency;
- apply current medical knowledge to medical data regarding diagnosis, treatment, prognosis and impairment;
- offer guidance regarding pertinent future medical information;
- attempt to clarify medical information with a peer-to-peer call; and
- evaluate functional and cognitive abilities and their expected impact on independence.

In recognition of the special function that medical resources perform in assessing medical information concerning claimants, Company personnel (including but not limited to claims handling personnel) will not attempt to influence a CC, OSP or IA provider in connection with such professional's opinion concerning the medical evidence or medical condition relating to a claimant.

## Guiding Medical Principles

Case 1:17-cv-00220-HSM-CHS   Document 49-3   Filed 06/27/18   Page 17 of 23   PageID #: 1054



Internal medical resources are expected to apply an appropriate level of critical scientific analysis to the review of medical information. Their analysis will be guided, in part, by the following principles:

- The claimant's complete medical condition (diagnoses as well as documented medical symptoms) will be considered and evaluated by our medical resources. When a medical resource notes a diagnosis or symptom outside the resource's medical specialty, s/he should provide the claims professional with guidance or recommendations for further evaluation of the same. When appropriate, additional medical reviews may occur in an effort to gain an understanding of the claimant as a whole.
- For LTD, IDI and CA STD only: Significant weight will be given to the opinion of an AP/HCP who is properly licensed and the claimed medical condition falls within the AP's customary area of practice, unless the AP's opinion is not well supported by medically acceptable clinical or diagnostic standards and is inconsistent with other substantial evidence in the record. In order for an AP's opinion to be rejected, the claim file must include specific reasons why the opinion is not well supported by medically acceptable clinical or diagnostic standards and is inconsistent with other substantial evidence in the record.
- Office notes, test results or other medical records that record findings of the claimant's visits are generally more useful than a "narrative summary" from the AP/HCP.
- More recent medical information is often more informative regarding current status than older data.
- An opinion from an AP/HCP with a higher level of expertise, specialization or training is generally more persuasive than the opinion from a provider with a lesser level of expertise, specialization, or training.
- A medical conclusion/opinion founded on detailed specific facts or observations is more persuasive than a medical conclusion without such a foundation.
- When an attending AP/HCP is recommending R&Ls, we should consider the basis behind the recommendation and determine whether we have the same information/reports the AP/HCP used in making his/her determination.

## Certification of Review (LTD and IDI only)

The claim file should reflect the rationale for our medical conclusions as well as the rationale for why, or why not, alternative sources of information gathering were pursued, such as a peer-to-peer call or IA.

When a medical resource concludes that impairment is inadequately supported or not supported by the medical information in the claim file, that professional should certify in writing that s/he has reviewed all of the medical and clinical evidence provided to him/her by the DBS administering the claim.

When new medical information is received after a medical review and certification has already taken place:

- the same medical professional who reviewed and certified the original medical information may review the new medical information. The medical professional should

Case 1:17-cv-00220-HSM-CHS Document 49-3 Filed 06/27/18 Page 18 of 23 PageID #: 1055



then certify in writing that s/he has reviewed the new information that supplements the information s/he reviewed previously; or

- a different medical professional may review the new medical information. That medical professional should then review and certify in writing that s/he has reviewed all of the medical and clinical evidence provided to him/her by the DBS administering the claim.

If an adverse claim decision is not based in whole or in part upon a Company medical opinion regarding impairment, medical resource certification may be present but is not required. A certified medical opinion may not be necessary in certain situations, including but not limited to situations where the adverse claim decision is based solely upon a contractual provision that does not include consideration of impairment (e.g., the policy maximum).

Top ▲

## Independent Assessments

Generally, if medical information in the file is unclear or insufficient to fully assess the insured's medical condition or we have reason to question opinions/information provided by the AP/HCP, we should consider other sources of information prior to requesting an IA. Doing so will help ensure we used all reasonable resources to clarify and/or supplement medical information in the file. If questions about the insured's physical and mental status persist, consult an OSP/CC, who can help determine whether an IA is appropriate and provide guidance on the type of medical provider appropriate to conduct the IA. See Independent Assessments.

Top ▲

## Medical Letters of Advocacy or Support

A generic statement from the claimant's medical provider or attending HCP supporting disability is not sufficient to approve or continue benefit payments in most cases. A factual basis behind the opinion should be evident. It may be relevant to evaluate whether the medical provider considered the claimant's work capacity relative to the claimant's occupation for LTD and IDI and functional and cognitive abilities and their expected impact on independence for LTC.

Top ▲

## Reference

Please refer any questions to your manager.

**Procedure**

- Functional Capacity and Occupational Demands
- Independent Assessments
- Medical Peer-to-Peer Contact



- Using the Term "Objective"

**BC Learning & Reference**

- California Claims Administration

**Other**

- Definition of California Claims

Top ▲



# Recording Conversations and Independent Assessments

**In this document:**

Applicability
Policy
Procedure
    Explain the Reason for Not Granting Permission
    Insistence on Recording a Telephone Conversation
    Refusal to Talk Without Recording the Telephone Conversation
    Refusal to Participate in an Independent Assessment Unless it is Recorded
Reference

## Applicability

STD (FI/SI), LTD (FI/SI), IDI, Group Life, LWOP, AD&D, LTC, All VB products

Top ▲

## Policy

An electronic recording of a conversation or IA can be very convincing evidence, but it is possible to alter a recording to create a false impression of what was actually said during the conversation or what took place during the IA. Therefore, when asked for permission to record a conversation or IA, we should decline the request. If the claimant refuses to participate in an IA unless it is recorded, consult with a DLR to assess the appropriateness of the request and determine next steps.

A DBS may choose to record an outgoing call with a claimant for quality purposes. The DBS should obtain verbal consent from the claimant at the start of the call. If the claimant does not give consent, the DBS should discontinue recording the call.

**Reminder: Each claim is unique and should be evaluated on its own merits. The actual policy governing the claim must be referenced.**

Top ▲

## Procedure

Case 1:17-cv-00220-HSM-CHS   Document 49-3   Filed 06/27/18   Page 21 of 23   PageID #: 1058



Every conversation with other parties should be conducted in a manner that assumes the exchange of information is being recorded. If you are asked for permission to record a conversation or IA, or you have reason to suspect the conversation is being recorded, follow these guidelines.

## Explain the Reason for Not Granting Permission

When we decline a request to record a conversation or IA, explain to the other party that:

- the recording can be misleading if taken out of context or altered in some manner;
- when participating in a telephone conversation, it should be sufficient for each party to keep written notes regarding the conversation; and
- an IA is conducted by an independent third party. His/her report should fully document the event.

Top ▲

## Insistence on Recording a Telephone Conversation

If the other party insists on recording the conversation even without our consent, or if you have reason to believe the call is being recorded without our consent, we should terminate the call and either:

- require that the other party provide us with the needed information in writing; or
- contact your DLR to discuss whether or not we should consent to recording the conversation.

Top ▲

## Refusal to Talk Without Recording the Telephone Conversation

If the other party refuses to talk to us if we do not agree to record the conversation, we cannot take adverse action on the claim solely because of the refusal to talk on the telephone. We should make an effort to obtain the required information in other ways (e.g., written requests).

It is a separate issue if the claimant fails to provide the information needed to adjudicate the claim. See Proof of Loss - LTD, LWOP, IDI & LTC, Proof of Loss - STD and VB and Proof of Loss - Group Life, AD&D, VB Life.

Top ▲

## Refusal to Participate in an Independent Assessment Unless it is Recorded



If the claimant refuses to participate in an IA unless it is recorded, consult a DLR to assess the appropriateness of the request and determine next steps. Some states have laws providing that an insured may have a third party (for example, videographer, transcriptionist, legal representative) present during an IA. If the claimant's request is granted, the potential IA provider will also need to be advised of the request through the IAN, so the provider may respond to the request as well. This request should be indicated under Special Instructions on the referral form.

Top ▲

## Reference

Please refer any questions to your manager.

**Procedure**

- Claim File Documentation
- Independent Assessments
- Proof of Loss - Group Life, AD&D, VB Life
- Proof of Loss - LTD, LWOP, IDI & LTC
- Proof of Loss - STD and VB

Top ▲

Case 1:17-cv-00220-HSM-CHS   Document 49-3   Filed 06/27/18   Page 23 of 23   PageID #: 1060