UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| LISA HOUSE, | ) | |
|---|---|---|
| *Plaintiff*, | ) | |
| | ) | Case No. 1:17-cv-220 |
| v. | ) | |
| | ) | Judge Mattice |
| UMUM LIFE INSURANCE COMPANY OF AMERICA and UNUM GROUP CORPORATION, | ) ) ) | Magistrate Judge Steger |
| | ) | |
| *Defendants*. | ) ) | |

## **MEMORANDUM OPINION**

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 23) and Plaintiff's Cross-Motion for Summary Judgment and Her Response to Defendants' Motion for Summary Judgment (Doc. 48). Because Plaintiff was required to exhaust her administrative remedies under the Employee Retirement Income Security Act, failed to exhaust those remedies, and cannot establish that it would have been futile to do so, Defendants' Motion for Summary Judgment will be granted. Plaintiff's cross-motion will be denied and the case dismissed.

## I. INTRODUCTION

This case involves a provision in Unum's long-term disability policy which governs independent medical exams. Under that provision, Unum has the right to "have any [recipient of long-term disability benefits], whose injury or sickness is the basis of a claim . . . examined by a physician . . . of its choice . . . ." (Doc. 24-1 at PageID #: 748). Lisa House, the plaintiff, is a recipient of long-term disability benefits under a Unum insurance policy. Unum exercised its discretion to request that Ms. House undergo an independent

1

medical exam to determine if she continued to meet her policy's disability requirements. One of Ms. House's friends accompanied her to the medical appointment with the intention of monitoring and videotaping the physician's examination of Ms. House. The examining physician refused to permit videotaping of the examination, and further refused to allow Ms. House's friend to accompany her into the exam room. As a result, Ms. House declined to undergo the independent medical exam. She then filed this lawsuit, asserting that she has a right under the policy to videotape the independent medical exam and to have a witness present.

## II.    FACTUAL SUMMARY

Lisa House became disabled in 2000 while working at a Toyota plant. Her disability arose as a result of neck and shoulder pain and restricted range of motion. Toyota made available to its employees a Unum long-term disability plan. After Ms. House developed a disability, she applied for long-term disability benefits under the Unum insurance policy. Unum approved Ms. House's application and started paying her long-term disability benefits in June 2001. Benefits have continued from that date through the present.

The insurance policy gives Unum the right to conduct a periodic claim review to determine whether a claimant continues to be "disabled" as that term is defined in the policy. Pursuant to that provision, Unum instructed Ms. House in 2017 to submit to an independent medical examination so that Unum could assess her current functional capacity and make a determination as to whether she is still disabled.

Ms. House, with a friend, reported to the designated doctor's office for the examination. She planned to have the friend accompany her into the exam room to monitor and videotape the doctor's examination. Upon arrival at the doctor's office, staff

provided to Ms. House a consent form prohibiting any recording of the medical exam and specifying that only Ms. House, the physician, and a physician-specified chaperone could attend the exam. Ms. House refused to sign the form, agree to the doctor's conditions, or submit to the medical exam without her friend present to videotape the event. Consequently, she left without undergoing the exam.

Days later, Ms. House spoke with a Unum representative, who advised her that she would need to submit to an independent medical examination or her disability benefits could be terminated. Ms. House replied that Unum would need to provide a different doctor who would permit her to have a third-party witness attend the examination to observe and videotape the exam. Unum declined Ms. House's demand that another doctor be designated and that her monitoring requirements be met. Unum's position is that it has a right under the policy to require an independent medical examination without Ms. House being able to impose any preconditions.

Ms. House and Unum reached an impasse concerning this issue. Ms. House then filed the instant lawsuit, alleging that Unum violated her rights under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132(a)(3) and (a)(1)(B). In her complaint, she demanded that the Court authorize her to videotape the independent medical examination and/or have her own designated third-party witness attend the exam as a witness. Unum denied liability and filed a counter-claim requesting that the Court enforce the terms of the policy under 29 U.S.C. § 1132(a)(3).

Both parties moved for summary judgment. Unum asserts that the insurance policy gives it an unqualified right to require Ms. House to undergo an independent medical examination without her being able to impose any preconditions. Ms. House contends that she is entitled to summary judgment because the policy does not expressly

preclude her from videotaping the medical examination or having a third-party witness accompany her during the exam.

## III. ANALYSIS

### A. Exhaustion of administrative remedies

ERISA requires that a plaintiff exhaust all available administrative remedies before filing a lawsuit in federal court. The exhaustion requirement "enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions." *Ravencraft v. UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir. 2000) (quoting *Makar v. Health Care Corp.*, 872 F.2d 80, 83 (4th Cir. 1989)).

Every ERISA employee-benefit plan is required to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. In fact, "[Section] 1132(a)(1)(B), provides a contract-based cause of action to participants and beneficiaries to recover benefits, enforce rights, or clarify rights to future benefits under the terms of an employee benefit plan." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998). Though the statute is silent on this point, "[t]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991).

Dismissal of the lawsuit is appropriate where a plaintiff fails to exhaust all administrative ERISA remedies before filing suit in federal court. *Weiner v. Klais & Co., Inc.*, 108 F. 3d 86, 90 (6th Cir. 1997).

### B. Application of the "futility exception"

#### 1. Statutory construction versus contractual interpretation

As indicated, a plaintiff normally has to exhaust administrative ERISA remedies before initiating a lawsuit in federal court. An exception to the "exhaustion of administrative remedies" requirement exists where it would be futile for the plaintiff to pursue such remedies. In other words, the failure to exhaust administrative remedies may be excused "where resorting to the plan's administrative procedures would simply be futile or the remedy inadequate." *Fallick*, 162 F.3d at 419. Ms. House asserts that it would have been futile for her to exhaust Unum's available administrative remedies in this case and, as a result, she should be permitted to pursue her federal court lawsuit without first exhausting such administrative remedies.

Ms. House seeks to fit within the futility exception to ERISA's exhaustion requirement. This exception is set forth in *Hitchcock v. Cumberland University 403(b) DC Plan*, 851 F.3d 552, 564 (6th Cir. 2017), which holds "exhaustion is not required when plaintiffs seek to enforce statutory ERISA rights rather than contractual rights created by the terms of the plan." Ms. House argues that she is attempting to enforce *statutory* ERISA rights rather than *contractual* rights created by the terms of Unum's ERISA plan documents. However, as Unum points out, the futility exception "does not apply to 'plan-based claims artfully dressed in statutory clothing, such as where a plaintiff seeks to avoid the exhaustion requirement by re-characterizing a claim for benefits as a claim for breach of fiduciary duty.'" *Id.* at 565 (quoting *Stephens v. Pension Benefit Guar. Corp.*, 755 F 3d 959, 965-66, n. 7 (D.C. Cir. 2014)). In determining whether a claim seeks to enforce *statutory* ERISA rights or whether it seeks to enforce (or challenge) *contractual* rights created by the ERISA plan documents, "'the relevant inquiry is what forms the basis of

[plaintiff's] right to relief: the contractual terms of the . . . plan or the provision of ERISA and its regulations.'" *Id.* (quoting *Stephens*, 755 F. 3d at 967).

In her complaint in this case, Ms. House frames her first cause of action as a statutory ERISA right by seeking relief for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3). Similarly, her second cause of action seeks to "clarify Plaintiff's rights to benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). In these causes of action, Ms. House pleads what appear to be statutory ERISA rights; however, her claims are, in reality, based on contractual rights created by ERISA plan documents.

More specifically, Ms. House's claims rest upon:

- Unum's right under the ERISA plan documents to choose a doctor to perform an independent medical examination (Doc. 1 at ¶ 41);

- Unum's right under the plan documents to require plaintiff to submit to an independent medical examination (*Id.* at ¶¶ 42-54);

- Whether Ms. House has a right, under the plan documents, to opt out of the independent medical examination scheduled by Unum if her monitoring preconditions (i.e., third party witness and videotaping) are not met (*Id.*);

- Whether the ERISA plan documents provide any guidance on the permissibility of third party witness monitoring and videotaping of the independent medical exam (*Id.*); and

- In the absence of express guidance in the plan documents, whether Unum should meet Ms. House's third party monitoring requirements in connection with the independent medical exam. (*Id.*).

The ultimate issue before the Court is rather simple. Ms. House believes that she should be entitled to have a witness attend and videotape the independent medical examination required by Unum's ERISA plan documents. Because the plan documents are silent on the issue of the third party witness and the videotaping, Ms. House argues that it is a matter of *statutory* construction as to whether such a right is somehow implicit

under ERISA law. Unum argues that it is a matter of *contractual* interpretation of the terms of Unum's ERISA plan documents.

By presenting the issue in this case as a matter of *statutory* construction, it appears that Ms. House is attempting to place a square peg in a round hole so that she can avail herself of the futility exception. The question as to whether Ms. House should be permitted to bring a third party witness to monitor and videotape her independent medical examination is first and foremost a matter of *contractual* interpretation of the terms of Unum's ERISA plan documents. The Court finds that it would not be futile for Ms. House to exhaust Unum's administrative requirements and, if necessary, obtain a review of this issue (i.e., monitoring and videotaping by a third party witness) by Unum's plan administrator. And, in fact, to file this lawsuit before Unum was able to complete its administrative review of the claim subverts the exhaustion requirement and ERISA's goal of efficient and cost-effective resolution of claim disputes. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F. 3d 609, 618 (6th Cir. 1998).

### 2. The facts and circumstances do not demonstrate "futility"

Ms. House opted out of Unum's administrative claim process, choosing instead to preempt that process by filing suit in federal court. For that reason, the Court does not—and, indeed cannot—know what would have become of Ms. House's LTD benefits had she exhausted Unum's available administrative remedies. The decision tree has too many branches to try to describe all of them, but several possible scenarios are set forth below.

- Had Ms. House participated in Unum's independent medical exam (with no witness/no videotape), the doctor may have made findings supporting continued LTD benefits for Ms. House. In that instance, Ms. House would not have felt it necessary to bring this lawsuit in federal court.

- Had Unum's designated physician made findings that did not support continued LTD benefits, Ms. House could have solicited an opinion from

her own designated physician. Faced with conflicting medical evidence, Unum may have decided to continue payment of Ms. House's LTD benefits. Again, no federal lawsuit would have been necessary.

- Alternatively, had Unum made an initial decision to terminate Ms. House's LTD benefits based on the results of the independent medical exam, Ms. House may have been able to get that decision reversed in the course of pursuing and exhausting Unum's administrative remedies.

- Ultimately, in the course of pursuing Unum's administrative remedies, Unum's plan administrator may have determined that the independent medical exam was flawed in some way and that Ms. House should be entitled to a new medical exam with a different physician.

- By exhausting Unum's administrative remedies, Unum's plan administrator would have been given an opportunity to determine whether she should be allowed to have a witness accompany her and videotape the independent medical exam. Unum would have been entitled to address this issue at its highest administrative level.

Unum's plan administrator did not have an opportunity to address any of the scenarios listed above because Ms. House did not pursue the administrative remedies that were available to her. Ms. House argues that, by opting out of the independent medical examination, it was a given that Unum would discontinue her benefits. While that may or may not be accurate, the initial denial of benefits would not have prevented Ms. House from pursuing Unum's administrative remedies under its ERISA plan documents. *See Commc'ns Workers of Am. v. AT&T*, 40 F.3d 426, 433 (D.C. Cir. 1994) ("[T]he denial of initial claims . . . is not enough to show futility of internal Plan remedies.").

By way of analogy, Ms. House opted for what amounts to an interlocutory appeal before the "judge" (in this case, Unum's plan administrator) had an opportunity to rule on the issue. The Court is not persuaded that it would have been futile for Ms. House to pursue and exhaust the administrative remedies available to her through Unum's processes. A variety of outcomes could have occurred that would have obviated the need for this lawsuit.

"The standard for adjudging the futility of resorting to the administrative remedies . . . is whether a clear and positive indication of futility can be made." *Fallick*, 162 F.3d at 419. Plaintiffs must demonstrate that "it is certain that [their] claim will be denied on appeal, not merely that [they] doubt . . . that an appeal will result in a different decision." *Id.* (quoting *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996)); *see Commc'ns Workers of Am.*, 40 F.3d at 432 ("The futility exception is . . . quite restricted and has been applied only when resort to administrative remedies is clearly useless.") (internal quotation marks and citations omitted).

Ms. House cites several Sixth Circuit decisions to support her argument that she should be excused from exhaustion of administrative remedies because it would be futile to pursue such remedies. First, Ms. House relies upon *Constantino v. TRW*, 13 F.3d 969 (6th Cir. 1994) and *Durand v. Hanover Insurance Group, Inc.*, 560 F.3d 436 (6th Cir. 2009). In these cases, the Court concluded that plaintiffs were excused from ERISA's exhaustion requirement; however, the Court in *Constantino* and *Durand* excused exhaustion because plaintiffs were challenging the legality of the ERISA plan rather than the terms of policy itself.[1] In the instant case, Ms. House is not challenging the legality of the ERISA plan. Rather, she is seeking a determination of specific rights and responsibilities under Unum's plan documents. Consequently, the cited cases do not apply.

Ms. House then relies upon *Fallick v. Nationwide Insurance Company*, 162 F.3d 410 (6th Cir. 1998), to support her futility argument. There, the Sixth Circuit held that the

---

[1] *See Constantino*, 13 F.3d at 975 (noting that administrative exhaustion would be futile since plaintiffs' claims were "directed to the legality of [the] . . . Plan, not to a mere interpretation of it."); *Durand*, 560 F.3d at 439-40 (finding that a plan participant's challenge to a plan's methodology for calculating lump-sum distributions was not subject to administrative exhaustion because the challenge was directed at the plan's legality).

district court abused its discretion in failing to find futility where the plaintiffs had engaged in a two-year "triangular dialogue of communications in every direction [with] the State Insurance Department and [the insurer]" regarding the methodology by which the insurer computed the reimbursement rate under their health-insurance plan. *Id.* at 417. Though the district court "found that this lengthy dialogue did not comply with the Plan's formal appeals process" and declined to excuse the plaintiff's failure to exhaust, the appellate court reversed and excused exhaustion as futile since the insurer had consistently defended its practice, refused to provide "more than but a cursory explanation of its methodology," and insisted that it would continue to use the same process "to calculate its reimbursement determinations despite evidence that this policy violate[d] the actual terms of the [health-insurance plan]." *Id.* at 417, 420. The conclusion reached in *Fallick* is inapposite here. Unlike the plaintiff in *Fallick*, Ms. House made no attempt to avail herself of the administrative remedies available under Unum's plan. Rather, she simply opted out of the plan remedies by filing the present lawsuit in federal court.

Finally, Ms. House relies upon *Hill v. Blue Cross Blue Shield of Michigan*, 410 F.3d 710 (6th Cir. 2005). In *Hill*, the beneficiaries of an employer-sponsored health-insurance program filed a class action against a third-party administrator alleging that the administrator's handling of medical-expense claims constituted a wrongful denial of benefits and a breach of fiduciary duty. *Id.* at 715-16. The beneficiaries claimed that exhaustion of administrative remedies was futile because the administrator's interests were aligned with the company, and the administrator refused to modify its claims-handling process. *Id.* at 719. Although the Sixth Circuit rejected the beneficiaries' conflict-of-interest claim, the court approved their refusal-to-modify argument, noting that the

administrator had "already reached a determination on the issue that would be presented in administrative-review proceedings, i.e., that it is not required to adopt a new claims-handling procedure that would prevent the denial of claims based solely on the claimant's final diagnosis." *Id.* at 719. In other words, the *Hill* plaintiffs demonstrated that exhaustion of remedies was unnecessary because the insurer would have affirmed the same claims-handling process in an administrative appeal. *See id.* The circumstances in the instant case are different than those presented to the Court in *Hill*. Ms. House has not challenged Unum's administrative appeal process. In fact, she never attempted to utilize the administrative remedies available under Unum's plan. The Court cannot know how Unum would respond to Ms. House's challenge to its claims handling procedure because Unum was never given an opportunity to address that challenge through its administrative appeal process.

The cases cited by Ms. House are distinguishable from the instant case. They do not lend support to the application of the futility exception in this case. Where there has been no denial of benefits, such claims should remain in the purview of the plan administrator, not the courts. *See Durand*, 560 F.3d at 439 (finding that "ERISA plans are often complicated things, and the question whether a plan's methodology was properly applied in a particular case is usually one best left to the plan administrator . . . . not [the] courts . . . .").

## IV. CONCLUSION

ERISA requires that a plaintiff exhaust available administrative remedies before filing a lawsuit in federal court. Ms. House did not attempt to utilize administrative remedies available to her under Unum's ERISA plan prior to filing this lawsuit in federal

court. She has not demonstrated that it would have been futile for her to pursue such administrative remedies.

For the reasons set forth herein, it is **ORDERED** that:

1. Defendants' Motion for Summary Judgment (Doc. 23) is **GRANTED**.;
2. Plaintiff's Cross-Motion for Summary Judgment (Doc. 48) is **DENIED**; and
3. The case is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED** this 25th day of September 2018.

*/s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE